IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVE PARSON, )
)
        Plaintiff, )
)
v. ) No. 04 C 3991
)
LOCAL 1, UNITE HERE, AFL-CIO, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Since 1999, <u>pro se</u> plaintiff Steve Parson has been a doorman at the Congress Plaza Hotel in Chicago (the "Hotel"). From February 1, 2000 until his membership was suspended for nonpayment of dues in December 2004, plaintiff was a member of defendant Local 1, UNITE HERE, AFL-CIO (the "Union"). Since June 15, 2003, the Union, which has approximately 130 members, has been on strike at the Hotel. For at least one year after the strike began, the Union picketed the Hotel nearly every day for at least 19 hours per day. Plaintiff joined the picketing for the first four days, but then spent most of the summer working as an understudy or stand-in on a movie being filmed in Chicago. Late in September 2003, plaintiff crossed the picket line and returned to work at the Hotel. He was among 20 Union members who

had crossed the picket line by that time. In his *pro se* complaint, plaintiff claims that the Union discriminated against him in that Union members on the picket line harassed him because of his race (African-American), color, and sex. These claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The claims of racial and color discrimination are also characterized as being based on 42 U.S.C. § 1981.[1]

Defendant moves for summary judgment on all counts. As required by Local Rule 56.1(a)(3), defendant submitted a statement of uncontested facts consisting of numbered paragraphs. Also, as required by Local Rule 56.2, defendant provided *pro se* plaintiff with a statement briefly describing the requirements for responding to a summary judgment motion. In response to defendant's motion, though, plaintiff did not provide a paragraph-by-paragraph response to the Local Rule 56.1(a)(3) statement as is required by Local Rule 56.1(b)(3). Where no such statement is filed by the party responding to summary judgment, the court ordinarily will take as true the factual statements contained in the movant's Rule 56.1(a)(3) statement. See N.D. Ill. Loc. R. 56.1(b)(3)(B). The court, however, is not required

---

[1] Plaintiff drafted his *pro se* complaint using this court's form complaint for employment discrimination. He checked boxes indicating the type of discrimination and the statutes relied upon.

to strictly apply this rule and has the discretion to consider countervailing evidence submitted by the nonmovant even if the nonmovant failed to comply with Local Rule 56.1(b)(3). It is particularly appropriate to exercise such discretion when the nonmovant is proceeding pro se. See Etheridge v. United States Army, 2005 WL 88970 *2 (N.D. Ill. Jan. 11, 2005); Etheridge v. United States Army, 2002 WL 31248473 *1 (N.D. Ill. Oct. 4, 2002); Alek v. University of Chicago Hospitals, 2002 WL 1332000 *2 (N.D. Ill. June 17, 2002), aff'd, 54 Fed. App'x 224 (7th Cir. 2002). Here, though, plaintiff does not provide a specific factual argument. The only evidence he provides are three notarized statements supporting that certain statements were made by striking union members. Plaintiff, however, similarly testified before the NLRB and at his deposition and defendant has accepted that testimony as true for purposes of summary judgment. Therefore, the facts set forth by defendant will be accepted as true[2] and it will be considered whether the facts entitle defendant to summary judgment.

---

[2] To the extent facts submitted by defendant are inconsistent or subject to multiple inferences, such disputes will be resolved in plaintiff's favor. See Eiencorp, Inc. v. Rocky Mountain Radar, Inc., 398 F.3d 962, 965 (7th Cir. 2005); Estate of Moreland v. Dieter, 395 F.3d 747, 758 (7th Cir.), cert. denied, 125 S. Ct. 2915 (2005); Hall v. Bennett, 379 F.3d 462, 464 (7th Cir. 2004); Hudson v. Chicago Transit Authority, 375 F.3d 552, 558 (7th Cir. 2004). Also, to the extent the supporting evidence is found to be ambiguous or inconsistent with the facts stated, factual issues will be resolved in the manner more favorable to plaintiff.

Defendant raises a number of arguments for granting summary judgment dismissing plaintiff's claims: The Title VII sex and color discrimination claims are barred because not raised before the EEOC. There is no evidence of harassment based on sex or color. Any harassment was motivated by plaintiff crossing the picket line, not race, sex, or color. The harassment supported by the evidence is not severe enough to constitute the hostile work environment necessary for a harassment claim. There is no sufficient basis for holding the Union liable for any harassment committed by some of its members. It is unnecessary to address all these arguments. All the claims fail because plaintiff has not shown that the harassment was sufficient to constitute a hostile work environment.

To violate Title VII or § 1981, workplace harassment based on race, color or sex must be so severe or pervasive that it alters the employee's work environment by creating a hostile or abusive environment. Whittaker v. Northern Illinois University, 424 F.3d 640, 645 (7th Cir. 2005); Dandy v. United Parcel Service, Inc., 388 F.3d 263, 271 (7th Cir. 2004). The work environment must be both objectively hostile and subjectively viewed as such by the plaintiff. Whittaker, 424 F.3d at 645; Mendenhall v. Mueller Streamline Co., 419 F.3d 686, 691 (7th Cir. 2005). In making the objective determination, factors to consider in determining whether the harassment is severe and pervasive enough include: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) 'whether it is

physically threatening or humiliating, or a mere offensive utterance;' and (4) whether it unreasonably interferes with the employee's ability to complete his or her assigned duties." Dandy, 388 F.3d at 271 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)). The determination is to be made from the objective perspective of a reasonable person considering all the circumstances. It is not to be made in a vacuum. The "inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by the target." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998); Hottenroth v. Village of Slinger, 388 F.3d 1015, 1035 (7th Cir. 2004); Cerros v. Steel Technologies, Inc., 288 F.3d 1040, 1046 (7th Cir. 2002). "A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field-even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office." Oncale, 523 U.S. at 81.

Defendant contends that the harassing conduct that is supported by the evidence must be viewed in the context of occurring on a picket line of striking union members where some employees, including Union members, are crossing the line to work. Even absent any race, sex, or color discrimination, such a situation is a hostile one where a level of abuse is common. See Rakestraw v. United Airlines, Inc., 981 F.2d 1524, 1535 (7th Cir. 1992), cert. denied, 510 U.S. 861, 906 (1993). It is the

position of the NLRB that it generally violates § 8(a)(1) of the National Labor Relations Act for an employer to refuse to reinstate a striking employee for making obscene, scandalous, or tawdry remarks on the picket line unless the remarks are accompanied by actual threats or coercive acts. Briar Crest Nursing Home, 333 NLRB 935, 947 (2001). But see NMC Finishing v. NLRB, 101 F.3d 528 (8th Cir. 1996) (denying enforcement of NLRB decision finding an employer engaged in an unfair labor practice by refusing to reinstate a striking employee who had a sign on a picket line stating, in reference to an employee crossing the line, "Who is Rhonda FSucking today?"). The NLRB has also found violations when employers refuse to reinstate strikers who use racial epithets on picket lines. See, e.g., Domsey Trading Corp., 310 NLRB 777, 778 n.4, 809 (1993), enforced, 16 F.3d 517 (2d Cir. 1994) (antisemitic remarks including "Hitler, kill you fuckin' Jews"); Shalom Nursing Home, 276 NLRB 1123, 1136 (1985) (picketers called replacement workers "niggers"); Airo Die Casting, Inc., 2006 WL 897623 (N.L.R.B. Div. of Judges April 4, 2006) (striker raised both middle fingers and yelled "fuck you nigger" at an employee in a car who was crossing the picket line).

Here, plaintiff worked as a doorman at the main entrance of the Hotel, which was in the vicinity of the picket line. Plaintiff testified that two of the striking employees, Sharon Williams and Lisa Langston, repeatedly used racially offensive language towards him as well as remarks about his masculinity or

sexual orientation.³ He also testified that no other strikers used such language. However, the statement of Pedro Lopez attached to plaintiff's response states that, "Sharon and Lisa" and "other protesters" made "racial and . . . sexual discriminatory remarks . . . such as sweet panties, faggot, loose butt, and loose booty-house nigger." Lopez's statement does not identify a particular time and ordinarily would not be specific enough to be used in opposition to summary judgment. For present purposes, though, it may be assumed that there were some remarks from strikers other than Williams and Langston. Williams and Langston were not employees of the Union, but they were employees of the Hotel and Union members, including being members of the Union organizing committee for the Hotel.

Prior to crossing the picket line, Williams and Langston had not used racially derogatory terms in reference to plaintiff. Such use began the first day he crossed the picket line in September 2003 and continued until May 2004. It would occur five to eight times a day when Williams and Langston were present on the picket line. Words they would use included "boy," "nigger," "Uncle Tom," "sell-out," and "slave boy." Statements they made included: "Get that cab, nigger. Get that cab, boy, get it." "There he goes singing those Negro spirituals, sweep that dirt up nigger, sweep for master slave Shlomo."⁴ "Help them, nigger.

---

³For purposes of summary judgment, plaintiff's testimony is accepted as true.

⁴Shlomo was the President of the Hotel.

Help them, boy." "You're a poor excuse for a man. You're nothing but a slave boy for the Congress. You're Shlomo's boy. You're a slave boy. Slave boy."

Plaintiff also testified that statements were made about his masculinity and accusing him of being homosexual. These remarks were intended to be derogatory. The remarks included repeatedly being called a "faggot" or "in the closet," and being called "loose booty," "hey girl," "sweetie," "sweet pants," and a "down low brother."

According to Parson's testimony, the atmosphere outside the Hotel during the first year of the strike was "horrific." Other nonstriking employees would also be yelled at each time they crossed the picket line. They were called things like "scab," "loser," and "traitor." Hotel guests were also yelled at, including being called "scabs." Parsons and other employees who were at the entrance received the most abuse because they repeatedly went back and forth past the picket line. Parsons testified that other employees who worked at the entrance were frequently yelled at, but were not subjected to the racial and homosexual taunts which he considered to be a higher level of abuse.

Defendant contends that the evidence is insufficient to infer that the derogatory remarks were motivated by racial, sexual, or color discrimination. Defendant contends the evidence only supports that the remarks were motivated by the fact that plaintiff was crossing the picket line. Defendant points to

evidence that the racial or sexual comments were often accompanied by comments related to plaintiff crossing the picket line. It also points to plaintiff's deposition testimony in response to questions regarding what he thought motivated Williams. Plaintiff testified that it was his "guess" that it was because he was being a traitor and she was trying to hurt him in the best way she could. That, however, was a "guess," not a conclusive admission. And while it may be admissible as an admission by an party-opponent, see Fed. R. Evid. 801(d)(2)(A), plaintiff's speculation about another's motivation is certainly not conclusive evidence. Also, the fact that Williams and Langston were themselves African-American does not preclude the possibility that they were motivated by plaintiff's race and color.[5] It is possible that, being African-American, Williams and Langston were harder on plaintiff than they would have been on a non-African-American who crossed the picket line and opposed them. In any event, since defendant is otherwise entitled to summary judgment, it is unnecessary to resolve whether there is a genuine factual dispute as to the motivation of Williams and Langston. It will simply be assumed that Williams and Langston were motivated by plaintiff's race, sex, and color.

The undisputed evidence is that, in crossing a picket line, plaintiff was being subjected to much antagonism from the picketing Union members, including numerous insults and taunts.

---

[5]This argument does not apply to the sex-based claim. Unlike plaintiff, Williams and Langston were female.

Others besides Williams and Langston were antagonizing plaintiff and others besides plaintiffs were recipients of abuse. On the evidence before the court, it is being assumed that plaintiff was being subjected to some additional abuse because of the discriminatory motivations of Williams and Langston.[6] That additional abuse, however, consisted of five to eight racial or sexual remarks on the days Williams and Langston were present and occasional other racial or sexual remarks from other strikers. In light of the level of antagonism that otherwise existed in plaintiff's job during the pertinent time period, those additional taunts cannot be found to be so severe or pervasive that they altered plaintiff's work environment to such a degree that the environment was transformed into a hostile environment. The additional comments were not particularly frequent in that plaintiff was otherwise subjected to a greater number of nonracial and nonsexual taunts each day. There were no physical assaults or threats. There is no evidence that the additional remarks made plaintiff's ability to perform his duties significantly more difficult than they already were with the strike going on. As plaintiff himself testified, his job duties required that he repeatedly cross the picket line and customers were also being taunted as scabs as were other employees working in the area of the picket line. The court does not condone the

---

[6]Again, no opinion is expressed as to whether evidence would adequately support that the Union can be held responsible for the conduct of Williams and Langston.

conduct that allegedly occurred, but the evidence does not support that it rose to the level of a hostile work environment. Summary judgment will be granted in defendant's favor.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [34] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice. If plaintiff wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of the entry of the judgment in this case.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: MAY 17, 2006